## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Stafon Edward Thompson,

      Petitioner,

v.

Tom Roy, Commissioner of
Corrections

      Respondent.

Civil No. 13-1524 (PJS/JJK)

## REPORT AND
## RECOMMENDATION

Bridget K. Sabo, Esq., Office of Minnesota Appellate Public Defender, counsel
for Petitioner.

J. Michael Richardson, Esq., and Jean E. Burdorf, Esq., Hennepin County
Attorney's Office, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

### INTRODUCTION

This matter is before the Court on the Petition of Stafon Edward Thompson
for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Thompson was
convicted in Minnesota state court of two counts of premeditated first-degree
murder, and is currently serving two consecutive life terms without the possibility
of release in the Minnesota Correctional Facility in Stillwater.  In his Petition for a
Writ of Habeas Corpus (Doc. No. 1) Thompson asserts that he is entitled to relief
because he was a juvenile when the offense was committed, and a mandatory
life without parole sentence for a juvenile homicide offender violates the Eighth

and Fourteenth Amendments to the United States Constitution under the United

States Supreme Court decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

Respondent argues that the Petition should be denied on the grounds that

Thompson is not entitled to habeas relief for his Eighth Amendment claim based

on *Miller*.  (Doc. No. 7.)  The District Court referred the matter to this Court for a

Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For

the reasons discussed below, this Court recommends that Thompson's Habeas

Corpus Petition be denied, and that this action be dismissed with prejudice.

## BACKGROUND

Thompson was charged with committing two counts of premeditated first-

degree murder at the age of 17.  A Hennepin County jury found him guilty on

both counts.  On March 19, 2009, the district court imposed a mandatory

sentence of two consecutive life terms without the possibility of release, as

required by Minnesota's sentencing rules.

Thompson appealed his conviction to the Minnesota Supreme Court.  He

claimed that certain evidence had been improperly admitted, that he had

received ineffective assistance of trial counsel, and that his sentence constituted

cruel and unusual punishment under the Eighth Amendment to the U.S.

Constitution.

The Minnesota Supreme Court rejected all these arguments, including

Thompson's Eighth Amendment claim, and affirmed his conviction on September

16, 2010. His conviction became final 90 days later, at the expiration of his opportunity to seek certiorari review by the U.S. Supreme Court.

More than a year and a half later, on June 25, 2012, the U.S. Supreme Court held, in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), that a mandatory life sentence without the possibility of parole for a juvenile homicide offender violates the Eighth and Fourteenth Amendments of the United States Constitution.

On June 24, 2013, Thompson filed this Petition for Habeas Relief. (Doc. No. 1.) Thompson claims that, under *Miller*, his Eighth Amendment rights were violated by Minnesota's mandatory sentencing scheme, which resulted in his sentence of life without the possibility of parole for the homicide crimes he committed as a minor.

## DISCUSSION

### I.   Exhaustion

Prior to reaching the merits, this Court must address a preliminary issue— whether Thompson has "exhausted" available state court remedies. Before filing a federal habeas petition, a petitioner must exhaust his state court remedies by fairly presenting his federal constitutional claims to the highest available state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A claim is unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process, *id.* at 845, but the petitioner has the right under state law to raise the claim by any available procedure, 28 U.S.C.

§ 2254(c).  Although he raised an Eighth Amendment claim in his direct appeal,

Thompson raises a new Eighth Amendment claim that was not reasonably

available at the time of his direct appeal.  His direct appeal was completed in

2010.  *State v. Thompson*, 788 N.W.2d 485 (Minn. 2010).  His new Eighth

Amendment claim is founded on the 2012 United States Supreme Court

decision: *Miller v. Alabama*, 132 S. Ct. 2455 (2012).  Thompson could not have

raised this *Miller*-based Eighth Amendment claim on direct appeal two years

before that decision was announced.

Still, it would likely be possible for Thompson to raise this *Miller* claim

today in the Minnesota court system by filing a petition for postconviction relief.

*See* Minn. Stat. § 590.01 (providing a procedure for convicted Minnesota

prisoners to pursue postconviction relief in the state courts).  Thompson has

declined to do so, but nevertheless argues that we should treat his claims as

though they are exhausted because the Minnesota Supreme Court recently

decided, in *Chambers v. State*, 831 N.W.2d 311, 331 (Minn. 2013), that *Miller* did

not apply retroactively to another prisoner who was sentenced to mandatory life

imprisonment without the possibility of parole when he was a minor.  Thus,

Thompson argues that the decision in *Chambers* renders any attempt at raising

his *Miller* claim in the Minnesota court system futile.

Respondent "does not disagree with this" approach, noting that it would be

not only futile, but also antithetical to judicial economy, for Thompson to pursue

postconviction relief in Minnesota on this issue.  (Doc. No. 8, Respt's Mem. 2.)

The United States Supreme Court discussed the concept of futility in *Engle v. Isaac*, 456 U.S. 107 (1982).  In Engle, three Ohio prisoners initiated habeas corpus proceedings after failing to raise constitutional objections to jury instructions at trial.  *Id.* at 110.  The prisoners contended that because such objections would have been futile under long-established Ohio law, this failure did not bar their claims for habeas relief.  *Id.* at 130.  The Court said that "the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial."  *Id.*  The Court explained that "[e]ven a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid."  *Id.*

The Supreme Court has also provided some support for the interpretation that the exhaustion doctrine does not require pursuit of a futile state appeal.  In its discussion of a habeas corpus petition based on a state statutory change, which the petitioner claimed violated the *Ex Post Facto* Clause of the Federal Constitution, the Court noted that:

> Petitioner did not advance his *ex post facto* claim in state court.  In the District Court respondents challenged his failure to exhaust his state remedies, but do not appear to have raised the exhaustion issue in the Court of Appeals; nor have they raised it in this Court. Presumably they are satisfied, as we are, that exhaustion would have been futile.

*Lynce v. Mathis*, 519 U.S. 433, 436 n. 4 (1997).

The Eighth Circuit Court of Appeals "recognize[s] the futility of requiring a

habeas petitioner to exhaust state remedies when the state court has recently

decided the same legal question adversely to the petitioner under nearly identical

facts." *Padavich v. Thalacker*, 162 F.3d 521, 522 (8th Cir. 1998); *see also*

*Hawkins v. Higgins*, 898 F.2d 1365, 1367 (8th Cir. 1990); *Piercy v. Black*, 801

F.2d 1075, 1077–78 (8th Cir. 1986).  In *Padavich* the court "acknowledge[d] the

possible inconsistency between this Court's holdings in *Hawkins* and *Piercy* and

the Supreme Court's statement in *Engle*," but still chose to "decide Padavich's

appeal on the merits because the exhaustion rule is not a rule of jurisdiction, and

sometimes the interests of comity and federalism [are] better served by

addressing the merits."  *Padavich*, 162 F.3d at 522 (quotation omitted).[1]

Following the Eighth Circuit decisions explaining that the exhaustion

doctrine does not require pursuit of a state appeal when the state's highest court

has recently decided the same issue under essentially identical facts, this Court

agrees with the parties that it would be futile for Thompson to further pursue state

---

[1]     Other federal circuit courts are split on the question whether the
exhaustion doctrine requires pursuit of a futile clime in state court.  *Compare
Fisher v. Texas*, 169 F.3d 295, 303 (5th Cir. 1999) ("The futility exception applies
when, as here, the highest state court has recently decided the same legal
question adversely to the petitioner."); *Allen v. Attorney General of Me.*, 80 F.3d
569, 573 (1st. Cir. 1996); *Goodwin v. Oklahoma*, 923 F.2d 156, 158 (10th Cir.
1991), *with Parker v. Kelchner*, 429 F.3d 58, 63 (3d Cir. 2005) ("[T]he exhaustion
requirement is not excused merely because a petitioner's claim will likely be
denied on the merits in state court."); *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir.
2003); *Minter v. Beck*, 230 F.3d 663, 666 (4th Cir. 2000); *White v. Peters*, 990
F.2d 338, 342 (7th Cir. 1993); *Roberts v. Arave*, 847 F.2d 528, 530 (9th Cir.
1988).

remedies.  The interests of comity and federalism are better served by

addressing the merits of Thompson's Petition; dismissing his claims without

prejudice so that he could pursue an unwinnable gambit in state postconviction

proceedings would waste the parties' resources and those of the Minnesota state

courts.  Because Thompson has no remaining non-futile avenue for state relief,

he has exhausted his available state remedies within the meaning of 28 U.S.C.

§ 2254(b)(1)(A).  We will therefore proceed to consideration of Thompson's

Eighth Amendment claim.

## III.    Thompson's Eighth Amendment Claim

### A.    AEDPA Standard

Habeas relief is available to a state prisoner if "he is in custody in violation

of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The Anti–Terrorism and Effective Death Penalty Act (AEDPA) limits habeas

review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

*Id.* § 2254(d)(1)–(2).

The United States Supreme Court explained the meanings of the "contrary

to" and "unreasonable application" clauses in *Williams v. Taylor*, 529 U.S. 362

(2000).  A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 412–13.  A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005) (quoting *Williams*, 529 U.S. at 411).

In addition, when reviewing a state court decision, "a federal court . . . presumes that the state court's factual determinations are correct."  *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000); *see* 28 U.S.C. § 2254(e)(1).  This deference applies to factual determinations made by state trial courts and state appellate courts.  *Sumner v. Mata,* 449 U.S. 539, 547 (1981).  The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

The Supreme Court has recently issued several rulings emphasizing the

wide latitude that must be accorded to state court rulings under AEDPA review. *See*, *e.g.*, *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (explaining that the AEDPA proscribes "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts"); *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Renico v. Lett*, 559 U.S. 766, 773–79 (2010); *Thaler v. Haynes*, 559 U.S. 43, 47–49 (2010).

In particular, the Supreme Court has stressed that section 2254, as amended by AEDPA, was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been "extreme malfunctions in the state criminal justice systems." *Harrington* 131 S.Ct. at 786. As a result, the Supreme Court has concluded that, so long as "fairminded jurists could disagree" on the correctness of the state court's decision, federal habeas relief should not be granted. *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable. *See id.* at 785 (explaining that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law") (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (emphasis in *Harrington*)).

**B.     The Distinct, Yet Congruous, Application of AEDPA and *Teague***

Thompson focuses his argument in support of his Petition on whether the

Supreme Court's holding in *Miller* is retroactively applicable to cases on collateral

review under *Teague v. Lane*, 489 U.S. 288, 310 (1989).  (Doc. No. 12, Pet'r's

Reply Mem., *passim*.)  But Thompson does not address how the AEDPA's

standard in 28 U.S.C. § 2254(d)(1) impacts our resolution of his request for the

writ of habeas corpus.  Respondent does focus on § 2254(d)(1), but gets the

issue wrong.  Respondent argues that the Minnesota Supreme Court reasonably

concluded in *Chambers v. State*, 831 NW 311 (Minn. 2013), that *Miller* was not

retroactively applicable to cases on collateral review and that this decision in

*Chambers* was not contrary to nor an unreasonable application of clearly

established federal precedent.  (Doc. No. 8, Resp't's Mem. 6 (arguing that the

Minnesota Supreme Court's holding in *Chambers* was neither "contrary to" nor

"an unreasonable application of" relevant federal precedent).)  However, the

§ 2254(d)(1) issue in this case is not whether the Minnesota Supreme Court's

2013 decision in *Chambers* on retroactivity of *Miller* unreasonably applied clearly

established federal law.  The issue here is whether the Minnesota Supreme

Court unreasonably applied clearly established federal law as determined by the

U.S. Supreme Court when the Minnesota court decided the merits of Petitioner's

Eighth Amendment claim on direct appeal in September 2010.  *See Greene v.*

*Fisher*, 132 S. Ct. 38, 44–45 (2011) (concluding that § 2254(d)(1) requires

looking back at the state court's decision that resulted from the adjudication on the merits of the habeas petitioner's constitutional claim and the clearly established federal law at that time).

When confronted with a retroactivity issue in federal habeas like the one in this case, we must conduct a *Teague* analysis <u>and</u> the inquiry required by § 2254(d)(1).  *Horn v. Banks*, 536 U.S. 266, 262 (2002) ("Thus, in addition to performing any analysis required by AEDPA, a federal court considering a habeas petition must conduct a threshold *Teague* analysis when the issue is properly raised by the state.").  The distinct *Teague* and § 2254(d)(1) inquiries, however, overlap and we need to examine the relationship between them to sort out the best way to coordinate both inquiries.  *See Martin v. Symmes*, Civ. No. 10-4735 (SRN/TNL), 2013 WL 5653447, at *14 n.12 (D. Minn. Oct. 15, 2013) ("While the Supreme Court has clearly stated that the AEDPA and *Teague* inquiries are distinct, it has not clearly stated how the two standards interrelate in a § 2254(d)(1) case.").

In 1989 a plurality of the Supreme Court in *Teague* adopted a general rule of nonretroactivity of new rules of criminal procedure for cases on collateral review in federal habeas.  "Unless they fall within an exception to the general rule new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."  *Teague*, 489 U.S. at 310.  There are two exceptions to this general principle that new

rules are not applied retroactively on collateral federal habeas review:

> The first exception permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the State to proscribe, . . . or addresses a "substantive categorical guarante[e] accorded by the Constitution," such as a rule "prohibiting a certain category of punishment for a class of defendants because of their status or offense." . . .
>
> The second exception is for "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding. . . .

*Saffle v. Parks*, 494 U.S. 484, 487–88 (1990) (internal citations omitted).

*Teague's* general rule of nonretroactivity was an exercise of the Supreme Court's "power to interpret the federal habeas statute." *Danforth v. Minnesota*, 552 U.S. 264, 278 (2008). Before AEDPA was passed in 1996, the statute giving the federal courts the authority to grant writs of habeas corpus left "unresolved many important questions about the scope of available relief." *Id.* The Court interpreted congressional "silence" about such matters as retroactive application through federal habeas of new rules of criminal procedure along with the statue's command to dispose of habeas petitions "'as law and justice require,' 28 U.S.C. § 2243—as an authorization to adjust the scope of the writ in accordance with equitable and prudential considerations." *Id.* Teague is "plainly grounded in this [statutory] authority." *Id.*

Seven years after *Teague*, Congress passed the AEDPA and did address the scope of relief that would be available in federal habeas on collateral review, including the applicability in federal habeas of constitutional rules that were

12

announced after a habeas petitioner's state conviction became final.  Under

AEDPA, a federal court may not grant habeas relief to a state prisoner with

respect to any claim that was "adjudicated on the merits in state court unless the

state court adjudication resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by

the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  This means

clearly established federal law at the time of the state court's decision.  *Greene*,

132 S. Ct. at 44–45.

Despite the distinct nature of the two inquiries, there is some congruence

between *Teague* and AEDPA:

> Because there is no reason to believe that Congress intended to
> require federal courts to ask both whether a rule sought on habeas
> is 'new' under *Teague*—which remains the law—and also whether it
> is clearly established under AEDPA, it seems safe to assume that
> Congress has congruent concepts in mind . . . .  It is perfectly clear
> that AEDPA codifies *Teague* to the extent that *Teague* requires
> federal courts to deny relief that is contingent upon a rule of law not
> clearly established at the time the state conviction became final.

*Williams v. Taylor*, 529 U.S. 363, 379-80 (2000) (Stevens, J. concurring).

Nevertheless, it is clear that Congress did not simply codify *Teague's*

nonretroactivity standard in § 2254(d)(1).  *Horn v.* Banks, 536 U.S. 266, 272

(2002) (*per curiam*).  There are several ways in which § 2254(d)(1) is distinct

from *Teague*, two of which make it is stricter than *Teague*.  One is that the

touchstone for § 2254(d)(1) analysis is whether the state court's decision

unreasonably applied, or was contrary to, clearly established federal law as

determined <u>by the U.S. Supreme Court</u>.  Under *Teague*, however, the analysis just focuses on whether the result reached by the state court was "dictated by precedent" existing at the time the defendant's conviction became final, not necessarily U.S. Supreme Court decisions.  Another difference is that § 2254(d)(1)'s temporal cutoff for the application of Supreme Court precedent is at the point in time of the state court's adjudication on the merits, whenever that happens to be in a particular case.  If the merits decision was made, for example, by a state intermediate court of appeals, but the Supreme Court's decision adopting a new rule of constitutional law did not occur until after that decision but before the case became final, the new rule would not apply because it was not clearly established when the intermediate court of appeals made its decision. *Teague* would apply a new constitutional rule of criminal procedure up until the time when the case becomes final.  So, if a state court of appeals rendered the last merits decision in the case applying existing constitutional law, and the new constitutional rule was announced after that decision, but before the case became final, *Teague* would apply the new constitutional rule, but § 2254(d)(1) would not.  *Greene*, 132 S. Ct. at 44.

Probably the most important way in which *Teague* and § 2254(d)(1) are distinct, however, lies in the two *Teague* exceptions to the general rule that new constitutional rules of criminal procedure are not applied retroactively on collateral review.  Neither of these exceptions is mentioned in § 2254(d)(1), yet

the Supreme Court has, in the 17 years since AEDPA was passed, continued to use them when examining whether a new constitutional rule applies retroactively to cases on collateral review in federal habeas.  This is the approach taken by the Eighth Circuit.  See *Danforth v. Crist*, 624 F.3d 915, 918–21 (8th Cir. 2010) (concluding that a "new rule" could not be applied retroactively because it did not satisfy the *Teague* exceptions).[2]

Based on the foregoing, this Court concludes that the best way to proceed is to first determine whether the requirements of § 2254(d)(1) have been met; that is, did the Minnesota Supreme Court, when it decided the merits of Thompson's Eighth Amendment claim, unreasonably apply clearly established federal law as determined by the U.S. Supreme Court at the time of that merits decision.  Then this Court will turn to the *Teague* retroactivity analysis focusing on whether either *Teague* exception applies in this case.

## C.    Application of the AEDPA

Under the AEDPA, we must determine whether, at the time the Minnesota Supreme Court rendered its decision on the merits in Thompson's case, his

---

[2]    In 2011 the Supreme Court left open the question "whether § 2254(d)(1) would bar a federal habeas petitioner from relying on a decision that came after the last state court adjudication on the merits, but fell within one of the exceptions recognized by *Teague* . . . ." *Greene*, 132 S. Ct. at 44 n.*; *see also Ramdass v. Agelone*, 187 F.3d 396, 406 n.4 (4th Cir. 1999) (stating that § 2254(d)(1) is "stricter" than *Teague* because it does not recognize the two *Teague* exceptions that permit retroactive application of new rules).  In this case we conclude that neither of the *Teague* exceptions apply, so this issue does not have to be addressed.

conviction and sentence was objectively unreasonable in light of clearly established United States Supreme Court precedents.  *See Greene*, 132 S. Ct. at 44.  Under § 2254(d)(1) federal courts must "focus on what a state court knew and did, and . . . measure state-court decisions against [the Supreme Court's] precedents as of the time the state court renders its decision.  *Id.* (quotations omitted).

Thompson's direct appeal was decided by the Minnesota Supreme Court on September 16, 2010.  Two Supreme Court decisions made prior to Thompson's direct appeal have particular relevance to our AEDPA analysis: *Graham v. Florida*, 130 S. Ct. 2011 (2010) (holding that the Eighth Amendment prohibits a sentence of life without the possibility of parole for a juvenile who committed a non-homicide offense), and *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the Eighth Amendment prohibits the death penalty for a juvenile).  Because *Graham* and *Roper* were both applicable Supreme Court precedent at the time of the Minnesota Supreme Court's decision on the merits in Thompson's direct appeal, under § 2254(d)(1), we must decide whether the Minnesota Supreme Court's adjudication of Thompson's Eighth Amendment claim was contrary to, or involved an unreasonable application of *Graham* and *Roper*.  In its decision in Thompson's direct appeal, the Minnesota Supreme Court relied on its own precedent applying *Roper* and concluded that a life sentence without the possibility of release for a minor does not violate the prohibition on cruel and

unusual punishment under the Federal and State Constitutions, which is consistent with *Roper*. *See State v. Thompson*, 788 N.W.2d 485, 496 (Minn. 2010) ("Thompson's sentence of two consecutive life terms without the possibility of release for a double homicide does not constitute cruel or unusual punishment."). The Court did not specifically discuss *Graham* in its decision, but *Graham* only prohibits life imprisonment without the possibility of parole for juveniles convicted of <u>non-homicide offenses</u>, which is inapplicable to Thompson's conviction for homicide. *See Graham*, 560 U.S. at 82 ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender.").

The Minnesota court's decision in Thompson's direct appeal was not contrary to either *Roper* or *Graham*. As the Eleventh Circuit concluded in *Loggins v. Thomas*, 654 F.3d 1204 (11th Cir. 2011), "the Supreme Court did not imply in *Roper* or in *Graham*, that a life without parole sentence is impermissible for a juvenile who commits a homicide[, and] [i]f anything, *Roper* implies that it is permissible." *Id.* at 1222. Nor did the Minnesota Supreme Court's decision involve an unreasonable application of *Roper* and *Graham*. The rule announced in *Miller* was not an obvious or foregone conclusion in light of *Roper* and *Graham*. Reasonable jurists could have disagreed after *Roper* and *Graham* about whether Thompson's mandatory life without parole sentence violated the Eighth Amendment. Minnesota's highest court concluded that it did not.

Although, if he were tried and convicted as a juvenile today, sentencing Thompson to life without the possibility of release would be objectively unreasonable in light of the clearly established Supreme Court law in *Miller*, applying the AEDPA standard, we cannot say that decision was objectively unreasonable at the time it was made.

### D.   Application of *Teague*

When a habeas petitioner relies on a Supreme Court case that post-dates his conviction, *Teague* establishes the framework for determining whether that later rule can be applied retroactively to his case.  The Supreme Court set forth a three-step analysis for determining whether a rule applies retroactively to cases on collateral review.  *Beard v. Banks*, 542 U.S. 406, 411 (2004).  First, the district court must determine the date when the defendant's conviction became final.  *Id.*  Second, the court must decide whether the rule at issue is actually "new."  *Id.*  And finally, if the rule is "new," the court must then determine whether the new rule falls into "one of the two narrow exceptions to the *Teague* doctrine."  *O'Dell v. Netherland*, 521 U.S. 151, 155–57 (1997).

### 1.   When Thompson's Conviction Became Final

"A conviction and sentence becomes final for purposes of retroactivity analysis when the availability of direct appeal . . . has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."  *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994); *see also*

*Greene*, 132 S. Ct. at 44 ("Finality occurs when direct state appeals have been exhausted and a petition for a writ of certiorari from [the U.S. Supreme] Court has become time barred or has been disposed of.").  As noted above, Thompson's conviction and sentence became final upon the expiration of the 90-day deadline for seeking certiorari review, which was approximately December 15, 2010.  Thus, his conviction became final well before the June 25, 2012 decision in *Miller*, and we must proceed with the rest of the *Teague* analysis to determine whether *Miller* retroactively applies in this collateral proceeding.

### 2.    Whether *Miller* Announced a New Rule

We must next determine whether *Miller* announced a new rule.  For purposes of *Teague*, a rule is "new" if it "breaks new ground."  *Teague*, 489 U.S. at 301.  This inquiry asks whether the result in a post-conviction decision on which a habeas petitioner relies was "dictated" by existing precedent at the time the individual's conviction became final.  *Beard*, 542 U.S. at 411.  The question is whether "'the unlawfulness of [Thompson's] conviction was apparent to all reasonable jurists.'"  *Id.* (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527–28 (1997)).

The conclusion reached above that, under the AEDPA, clearly established federal law as determined by the United States Supreme Court did not render the Minnesota Supreme Court's decision in Thompson's direct appeal objectively unreasonable compels the congruent conclusion that *Miller* announced a "new

rule" for purposes of *Teague*.  Like the district court in *Martin v. Symmes*, this Court concludes that the Supreme Court's opinions in *Graham* and *Roper* "are consistent with and led to the Court's decision in *Miller*, [but] *Miller* was not dictated by those precedents."  *Martin*, 2013 WL 5653447, at *15.  Thus, when Thompson was sentenced, the unlawfulness of the sentence he received under the rationale of the *Miller* decision was not apparent to all reasonable jurists.  Thus, *Miller* announced a "new rule" for *Teague* purposes, and we must turn to the final step in the *Teague* analysis to determine whether either exception applies.

### 3.   Whether Either *Teague* Exception Applies

*Teague* recognizes two exceptions to the general rule that "a new rule is . . . applicable only to cases that are still on direct review."  *Whorton v. Bockting*, 549 U.S. 406, 416 (2007).  "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding.'"  *Id.* (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990).  New substantive rules include "decisions that narrow the scope of a criminal statute by interpreting its terms . . . as wells as constitutional determinations that place a particular conduct or persons covered by the statute beyond the State's power to punish."  *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004).  These rules "apply retroactively because they necessarily carry a significant risk that a

defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id.* (quotations omitted). Rather than an "exception" to *Teague*, such "substantive" rules are more accurately characterized as "substantive rules not subject to the [*Teague*] bar." *Id.* at 352 n.4.

New rules of procedure generally do not apply retroactively.

They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.

*Schriro*, 542 U.S. at 352 (quotations omitted). The class of watershed rules of procedure implicating the fundamental fairness and accuracy of criminal proceedings is extremely narrow. "A rule that qualifies under this exception must not only improve accuracy [of the trial's result], but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242 (1990).

Neither *Teague* exception applies in this case.[3] First, *Miller* does not satisfy the first *Teague* exception for new "substantive" rules. As noted above,

---

[3] Thompson also argues that *Miller* is retroactively applicable because the Supreme Court has essentially held it to be retroactive. He contends that this is the case because when the Supreme Court decided *Miller*, it remanded the companion case of *Jackson v. Hobbs*. (Pet'r's Reply Mem. 5–6.) But the Supreme Court's remand of *Jackson* was not accompanied by a holding that

(Footnote Continued on Next Page)

these "substantive" rules generally apply retroactively because they carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose on him. *Schriro*, 542 U.S. at 352. *Miller* does not place a class of conduct beyond the power of the state to proscribe; it does not make it unconstitutional for the states to punish homicide offenses by a juvenile. Nor does it prohibit a category of punishment for a class of defendants; it does not prevent a state from constitutionally sentencing a juvenile to life in prison without parole. Instead, *Miller* prohibits a state from <u>mandatorily</u> sentencing a juvenile to life without the possibility of release. *Miller*, 132 S. Ct. at 2471 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime . . . . Instead it mandates only that a sentence follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty."). After *Miller*, the states may still impose a life without parole sentence

---

(Footnote Continued from Previous Page)

*Miller* was retroactively applicable. *Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."). In fact, it appears that *Jackson* was remanded because the respondent in that case never raised the issue of non-retroactivity under *Teague's* general rule during the appeal. *See People v. Carp*, 828 N.W.2d 685, 712–13 (Mich. 2012) ("[B]ecause the State did not raise the issue of retroactivity, the necessary predicate for the Court to resolve the question of retroactivity was waived. Hence, merely because *Jackson* was before the Court on collateral review is not dispositive on the issue of retroactivity."). Since there was no specific holding that *Miller* applied retroactively and because the circumstances of the remand in *Jackson* point to a basis other than retroactivity of *Miller* for the Court's disposition of *Jackson*, this argument is unavailing.

on a juvenile offender if it follows the correct procedures.  *Id.* at 2469 ("Although

we do not foreclose a sentencer's ability to [sentence a juvenile to life without

parole] in homicide cases, we require it to take into account how children are

different . . . .").

With respect to the first *Teague* exception, *Miller* is best analogized to the

decisions of the Supreme Court which have not been given retroactive

applicability where new procedural requirements are established for purposes of

imposing the death penalty.  *See Craig v. Cain*, No. 12-30035, 2013 WL 69128,

at *2 (5th Cir. Jan. 4, 2013) (per curiam) (comparing *Miller's* new rule to other

new rules establishing capital-sentencing schemes that were not retroactively

applicable as "substantive" rules).  Thus, *Miller* falls outside the first exception

under *Teague* because it does not eliminate the power of the state to impose the

punishment in question (life without the possibility of release) on this class of

persons (juveniles) <u>regardless of the procedures followed</u>.  *See Lambrix v.*

*Singletary*, 520 U.S. 518, 539 (1997) (concluding that first *Teague* exception was

not met by the Supreme Court's decision in *Espinosa v. Florida*, 505 U.S. 1079

(1992), which held that if a sentencing judge is required to give deference to a

jury's advisory sentencing recommendation in a state that requires specified

aggravating circumstances to be weighed against any mitigating circumstances

at the sentencing phase of a capital trial, then neither the jury nor the judge is

constitutionally permitted to weigh invalid aggravating circumstances); *Penry v.*

*Lynaugh*, 492 U.S. 302, 329 (1989) (discussing the concept of the first *Teague* exception "in terms of substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed), *abrogated by Atkins v. Virginia*, 536 U.S. 304 (2002).

*Miller* also did not announce a "watershed rule of criminal procedure" for purposes of the second exception to nonretroactivity under *Teague*. *Miller's* prohibition on mandatory life without parole sentences for juvenile offenders does not implicate the fundamental fairness and accuracy of the criminal proceeding. Unlike the decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963), providing for a right to counsel in criminal proceedings, which is the only procedural rule the Supreme Court has identified as fitting within the second *Teague* exception, *Miller's* new rule does not attempt to eliminate "an impermissibly large risk of an inaccurate conviction [or] alter our understanding of the bedrock procedural elements to the fairness of a proceeding." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007); *Craig*, 2013 WL 69128, at *2 ("The Supreme Court's decision in *Miller* is an outgrowth of the Court's prior decisions that pertain to individualized-sentencing determinations. The holding in *Miller* does not qualify as a 'watershed rule[ ] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding") (quoting *Beard v. Banks*, 542 U.S. 406, 417 (2004)).

Accordingly, this Court concludes that in *Miller* the Supreme Court

announced a "new" rule that is neither substantive nor a watershed rule of criminal procedure that is not retroactive to cases on collateral review.

Like the Court in *Martin v. Symmes*, Civ. No. 10-4753 (SRN/TNL), 2013 WL 5653447, at *15 n.15 (D. Minn. Oct. 15, 2013), this Court concludes that the retroactivity of *Miller* is an issue that is "debatable among reasonable jurists," and, as a result, recommends that this is an appropriate issue on which to grant a Certificate of Appealability. For example, reasonable jurists might conclude that *Miller* is substantive because it changed the range of permissible punishment based on the offense at issue and the class of offender, or that it created the equivalent of a new element that must be considered before sentencing a juvenile to life without the possibility of release.  *See Chambers v. State*, 831 N.W.2d 311, 336–38 (Minn. 2013) (Anderson, Paul H., J., dissenting); *Jones v. Mississippi*, 122 So.3d. 698 (Miss. 2013) (concluding that *Miller* modified Mississippi's substantive law by narrowing its application to juveniles, essentially adding a new element required to be established for the imposition of a life without parole sentence).

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.     The Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus **(Doc. No. 1)**, be **DISMISSED WITH PREJUDICE**; and

     2.     A Certificate of Appealability be **GRANTED** as to Petitioner's Eighth

Amendment challenge to his sentence.


Date: December 18, 2013

                               _s/ Jeffrey J. Keyes_
                               JEFFREY J. KEYES
                               United States Magistrate Judge

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 3, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.